THE STATE v. TOBIE, *Appellant.*

Division Two, November 23, 1897.

1. **Forgery**: INTENT: SUFFICIENCY OF INDICTMENT.    A case in which it is held that the indictment plainly avers that the forgery of a deed to land was procured to be made with a felonious intent.    (Following *State v. Fisher,* 65 Mo. 437.)

2. **Admission of Evidence**: DISCRETION OF TRIAL COURT.    Where much is necessarily left to the discretion of the trial court as to the admission of evidence, and nothing appears to indicate that the discretion was abused, the appellate court will not interfere.

3. **Forgery**: EVIDENCE: COMPARISON TO SUBSEQUENT WRITING.    There was no error in refusing to permit defendant to identify a certain writing alleged to have been written by him four months after the alleged forgery, as a basis of comparison with other papers in evidence.

4. **Particularity in Instructions.**    It is not necessary for an instruction to use the identical words of a statute or to contain all the particularity of a criminal charge in an indictment.

5. **Supplementary Instructions.**    Where the words "with intent to defraud" are omitted from one instruction but are plainly expressed in another, the defect is cured, it appearing that the second instruction clearly covered the case, and the evidence disclosing not the slightest inference that the forgery was committed with any other intent.

6. **Forgery**: SEALING DEED.    It is not necessary to a conviction under an indictment charging one with forging a deed, to show that the deed was "sealed."

7. ———: DELIVERY.    As soon as the name of the owner of the land is feloniously attached to a deed, the forgery is complete, although the instrument is not delivered, and although delivery is necessary to effectuate the fraud.

8. **Redundant Instructions.** When the court has given full and proper instructions as to the credibility of witnesses and the reputation of defendant, it is not error to refuse other instructions on the same subjects asked by defendant.

9. **Testimony of an Accomplice.** One may be convicted of crime upon the uncorroborated testimony of an accomplice after being duly cautioned by the court.

10. **Instruction Against Interest.** An instruction as to the weight to be given defendant's admission in his own interest and against interest, considered and approved.

*Appeal from Jackson Criminal Court.*—Hon. John W. Wofford, Judge.

Affirmed.

*Marcus T. C. Williams* for appellant.

(1) The second count of the indictment upon which defendant was convicted fails to charge that defendant caused to be forged the deed alleged in the indictment, with a felonious intent to defraud, and therefore fails to state facts sufficient to constitute any offense under the law of this State. R. S. 1889, sec. 3626; *Mattison v. State*, 3 Mo. 421; *State v. Jackson*, 89 Mo. 561; *State v. Clayton*, 100 Mo. 519; *State v. Taylor*, 117 Mo. 181; *State v. Fairlamb*, 121 Mo. 137; *State v. Norman*, 136 Mo. 1; *State v. Rucker*, 93 Mo. 91; *State v. Rowlen*, 114 Mo. 626; *State v. Patterson*, 116 Mo. 505; *State v. Allen*, 116 Mo. 548; *State v. Gullette*, 121 Mo. 448; *State v. Crab*, 121 Mo. 554; *State v. Pratt*, 121 Mo. 556; *State v. Dawson*, 124 Mo. 418; *State v. Pierce*, 136 Mo. 34. (2) The court erred in refusing to permit the identification of the paper handed to defendant while on the witness stand as the genuine handwriting of defendant, for use as a standard of comparison with the forged deed. Acts 1895, p. 284; Rogers, Exp. Test., sec. 137; 9 Am. and Eng. Ency. of Law, pp. 283, 298;

State v. Tobie.

2 Taylor's Evidence, sec. 1668; *Mallory v. State*, 36 S. W. Rep. 751. (3) The instruction 1 for the State is erroneous in failing to require, in order to convict defendant, that he should have aided in or abetted the forgery by Ebbs with an intent to defraud. *State v. Umble*, 115 Mo. 452; R. S. 1889, sec. 3626; *State v. Clayton*, 100 Mo. 519; *State v. Gullette*, 121 Mo. 448; *State v. Fairlamb*, 121 Mo. 155; *State v. Hayes*, 105 Mo. 82. (4) Instruction 2 for the State is subject to same objection. In that instruction the intent to defraud is limited to the conspiracy to forge the deed and is not required to be forgery itself. (5) The word "deed" imports a complete instrument, signed, sealed, and delivered. *State v. Fisher*, 65 Mo. 438. (6) Delivery is essential to the complete execution of a deed, and if a deed is not delivered it is no more a deed than if not signed. *Huey v. Huey*, 65 Mo. 689; *Turner v. Carpenter*, 83 Mo. 333; *Hammerslough v. Cheatham*, 84 Mo. 13; *Goddard's* case, 2 Rep. (Coke) 4b. (7) Instruction 3 given for the State authorizing a conviction on the uncorroborated testimony of an accomplice alone, although it has heretofore received the sanction of this court, is wrong in principle, opposed to the great weight of authority, and should be repudiated. 29 Am. and Eng. Ency. of Law, p. 825, and cases cited; *State v. Jones*, 64 Mo. 391; *State v. Chiagk*, 92 Mo. 413.

*Edward C. Crow*, Attorney-General, and *Sam B. Jeffries*, Assistant Attorney-General, for the State.

(1) The indictment is good. *State v. Fisher*, 65 Mo. 407; 4 Parker's Crim. Rep. 217; Kelley's Crim. Law, 523; *State v. Gullette*, 121 Mo. 447. (2) It is alleged that the forgery was done with felonious intent to defraud. The second count of the indictment alleges that defendant "unlawfully and feloniously caused to

be forged, etc., etc.," and these terms, "unlawfully and feloniously," are connected with the intent by the words "then and there to defraud." *State v. Herrell*, 97 Mo. 109. (3) It is not necessary for the indictment to show in what manner the act charged is to result in fraud. That is a matter of evidence. *Commonwealth v. Dunlehay*, 157 Mass. 386; *Traverse v. The State*, 83 Ga. 372. (4) The instruction numbered 1 properly submits to the jury the question whether the act was done with the intent to injure or defraud. *State v. Warren*, 109 Mo. 430; *State v. Gullette*, 121 Mo. 447. (5) Instruction 3, as to an accomplice and the testimony thereof, correctly states the law under the decisions of this court. *State v. Donnelly*, 130 Mo. 642; *State v. Dawson*, 124 Mo. 422; *State v. Crabb*, 121 Mo. 554; *State v. Woolard*, 111 Mo. 248; *State v. Jackson*, 106 Mo. 179. (6) The refusal of the two instructions was no error, because the court had previously given instructions upon the same propositions. *State v. Elliott*, 98 Mo. 150; *State v. Jackson*, 99 Mo. 60; Kelley's Crim. Prac., sec. 397.

GANTT, P. J.—The defendant was jointly indicted with Alan F. Reed and John T. Ebbs in the criminal court of Jackson county at the September term, 1895. A severance was granted, and Reed and Tobie were separately tried. The latter, the defendant herein, was convicted on the twenty-ninth of April, 1897, of having feloniously caused to be forged in Jackson county, Missouri, a certain deed, purporting to be the act of one C. E. Wetmore, to certain lands in Leavenworth county, Kansas, by which the title thereto purported to be conveyed to one F. L. Kirkbride with the intent then and there to defraud said Kirkbride.

The facts are that Reed was a barkeeper in Kansas City, Missouri; the defendant Tobie was a carpenter, and these two and one John T. Ebbs agreed and con-

spired together to swindle one F. L. Kirkbride, a grocery merchant in Kansas City, out of his stock of groceries by inducing him to accept a forged deed to certain lands near Leavenworth, Kansas, to which they had no semblance of a title. They proceeded in this manner: These three men represented to Kirkbride, through Ebbs, that Ebbs's name was C. E. Wetmore, and that he owned the northwest quarter of section number 28, township number 10, range 21 east, of sixth principal meridian, in Leavenworth county, Kansas, and Ebbs agreed to trade the said quarter section of Kansas land, together with some other property, for the grocery store of Kirkbride and $200 cash, and in order to accomplish this result, *Tobie procured an abstract to the land named, and by means of chemicals removed certain words and figures in the abstract, and removed two sheets thereof, so that the same, when presented to Kirkbride, showed a clear title in C. E. Wetmore to the one hundred and sixty acres of Kansas land.* Ebbs represented himself to be Wetmore, and took the abstract to Kirkbride, and Kirkbride in turn took the abstract to William T. Reed, his attorney, in the New York Life Building in Kansas City, Missouri. Ebbs here signed as C. E. Wetmore the deed conveying the quarter section of land in Leavenworth county, Kansas, and the attorney, William T. Reed, examined the abstract for Kirkbride, whose attorney he was, and pronounced it all right, showing a clear title in C. E. Wetmore to the land described. Reed was not a notary in this State, but lived in Kansas City, Kansas, and had an office there, and was a notary in Kansas, and Ebbs asked Reed to take the acknowledgment, and Mr. Reed said to him that he was not a notary in this State, and suggested to him that he go to some notary in Kansas City, Missouri, but Ebbs replied that he was a stranger in Kansas City, Missouri, and unacquainted. There-

upon Mr. W. T. Reed replied that it was too late to find another notary that evening in Kansas City, Missouri, but if they would step over into Kansas within his jurisdiction he would take the acknowledgment. Kirkbride then and there in the office of W. T. Reed, Esq., in the New York Life Building in Kansas City, Missouri, on June 20, 1895, delivered his check for $200 to Ebbs, and also a bill of sale of his stock of groceries, and thereupon, at the same time and place, Ebbs, simulating C. E. Wetmore, delivered the deed to the land in Kansas to Kirkbride, and both then accompanied Mr. W. T. Reed to his office in Kansas City, Kansas. On their way over Kirkbride, who had the deed, gave it to Mr. Reed. When they arrived at his office in Kansas City, Kansas, he took Ebbs' acknowledgment of the deed and made his certificate and sent it that same night by mail to Leavenworth for record. After they returned from Kansas City, Kansas, Kirkbride gave formal possession of the stock of goods to Ebbs. The next day Tobie and Ebbs remained in charge. It seems to have been a part of the scheme to trade or turn over the stock to one Deeter. For some reason not clearly disclosed, soon after the consummation of the trade, Kirkbride began to suspect that he had been defrauded. On the evening of the twenty-second of June, Ebbs, Tobie, the defendant, Alan F. Reed, James Steele and Dan Deeter all met at or about the store. The defendant Tobie had gone to the residence of Ebbs about 4 o'clock in the afternoon of that day and advised Ebbs that all the parties would be at the store between 7 and 8 o'clock for the purpose of turning over the goods to Deeter, another Kansas man. On their way down Tobie remarked that the other fellows were trying to "hog" Ebbs and himself, and leave them out, whereupon Ebbs said that "nobody will get the bill of sale unless I get some money out of it."

When they reached the store that evening the clerk had closed up, and was upstairs with Kirkbride and his wife. Thereupon they called for the clerk, whereupon Mr. Kirkbride came down, and coming up to the crowd said *"This deal is a fraud."* Whereupon Tobie, Alan F. Reed, and Deeter hurriedly left, going in different directions, leaving Ebbs alone with Kirkbride. Ebbs soon wilted, and returned the bill of sale to Kirkbride. On the succeeding morning, about 6 oclock, Tobie appeared at the home of Ebbs, and gave him $2 and advised him to "skip" and demanded the bill of sale, but Ebbs told him he had returned it to Kirkbride. Thereupon they were all arrested. The errors assigned will be noted in their order.

I. As the indictment is challenged, it is thought best to give it at length, as follows:

"STATE OF MISSOURI, ⎫
                    ⎬ ss.
"County of Jackson, ⎭

"In the criminal court of Jackson county, Missouri, at Kansas City, Mo., September term, A. D. 1895.

"The grand jurors for the State of Missouri, in and for the body of the county of Jackson, upon their oath present that John T. Ebbs, P. D. Tobie, and Alan F. Reed, late of the county aforesaid, on the 20th day of June, 1895, at the county of Jackson, State aforesaid, did unlawfully and feloniously forge a certain deed purporting to be the act of one C. E. Wetmore, by which a right and interest in certain real property, which in said deed purports to lie and be situate in the county of Leavenworth, State of Kansas, and which in said deed was described as follows, to wit: 'The northwest quarter of section number twenty-eight, township number ten, range twenty-one, east 6th p. m., containing in all one hundred and sixty acres of land more or

less,' purported to be transferred and conveyed to one F. L. Kirkbride, with intent then and there to defraud the said F. L. Kirkbride, against the peace and dignity of the State.''

Second count:

"And the grand jurors aforesaid, in and for the body of the county of Jackson, upon their oath do further present that John T. Ebbs, Alan F. Reed, and P. D. Tobie, late of the county aforesaid, on the 20th day of June, 1895, at the county of Jackson, State aforesaid, did unlawfully and feloniously cause to be forged a certain deed, purporting to be the act of one C. E. Wetmore, by which a right and interest in certain real property, which in said deed purports to lie and be situated in the county of Leavenworth, State of Kansas, and which in said deed was described as follows, to wit: 'The northwest quarter of section twenty-eight, township number ten, range twenty-one, east 6th p. m., containing in all one hundred and sixty acres of land more or less,' purported to be transferred and conveyed to one F. L. Kirkbride, with intent then and there to defraud said F. L. Kirkbride, against the peace and dignity of the State.''

The defendant Tobie was convicted under the second count.

It is urged that the indictment is bad in that it fails to aver that the forgery was procured to be made *with a felonious intent*. By our statute, section 3626, Revised Statutes 1889, "Every person who shall forge, counterfeit, or falsely alter or cause, or procure to be forged, counterfeited, or falsely altered . . . . . any deed or other instrument being, or purporting to be, the act of another, by which any right or interest in real property shall be, or purport to be transferred, or in any way changed or affected, . . . . . with intent to defraud shall on conviction be adjudged guilty of forgery in the

first degree." It will be observed that the second count under which defendant was convicted alleged that he "unlawfully and feloniously caused said deed to be forged *with the intent to defraud said Kirkbride.*" In other words, *the specific fraudulent intent* denounced by the statute is plainly averred, and *ex vi termini* includes *the felonious intent* required to charge this particular crime. The form of this indictment was expressly approved in *State v. Fisher*, 65 Mo. 437, in which it was shown by SHERWOOD, J., that it fully met the requirements of a good criminal pleading. That decision has never to our knowledge been questioned by this court, and the various decisions in other cases cited by the appellant do not conflict with it. It has been expressly reaffirmed in *State v. Gullette*, 121 Mo. 447. It is the usual and approved form. 3 Greenl. Ev. [15 Ed.], sec. 104; Kelly's Crim. Law and Prac., sec. 768; *State v. Scott*, 48 Mo. 422; 3 Chitty, Crim. Law, 1048; *State v. Comfort*, 5 Mo. 357; *State v. Yerger*, 86 Mo. 33; *State v. Horner*, 48 Mo. 520; *State v. Jones*, 86 Mo. 623; *State v. Wood*, 124 Mo. 412; *State v. Phillips*, 78 Mo. 49; 8 Am. and Eng. Ency. Law, p. 507, note 2.

II.   No error can be predicated upon the action of the court in refusing to permit the defendant to identify a certain writing alleged to have been written by himself some *four months after* the alleged forgery, as a basis of comparison with the other papers in evidence. The bill of exceptions recites that "in fact said paper was never offered in evidence and is not incorporated in the bill." It is apparent that there is nothing before us for review. Inasmuch as the said paper must have been proved to be genuine to the satisfaction of the judge of the criminal court before it was admissible, it must, in the absence of anything to the contrary, be presumed that the trial court was unwilling to inaugurate a practice so well calculated to lead to frauds upon the courts

and juries.    Where so much is necessarily left to the judgment of the trial court, and so little to indicate that he abused his discretion, we will not interfere.

III.    Counsel for defendant attack the first instruction for the State because the words "with intent to defraud" are omitted *after* the words "did intentionally and willfully incite, advise, counsel, or procure the said John T. Ebbs to sign the name of C. E. Wetmore to said deed, feloniously intending to forge said name to said deed." The criticism displays the ingenuity of counsel and evidences the thorough preparation with which he always presents his cases, but we can not agree that it is necessary for an instruction to a jury to use the identical words of a statute, or to contain all the particularity of a criminal charge in an indictment.    In the same instruction the attention of the jury had been called to the constituent elements of the crime, a forgery, with intent to defraud, and then they are told that if Tobie intentionally and willfully advised, incited, counselled and procured Ebbs to sign Wetmore's name to said deed, *feloniously intending to forge said name to said deed*, he, too, was guilty as was Ebbs.    The instruction is well enough in itself though the words "with intent to defraud" might well have been inserted.    But if there be a technical failure to insert the words "with intent to defraud," it is fully and amply supplied by the second instruction, which is in these words:

"2.    You are instructed that when two or more persons form a design or purpose to do an unlawful act, each of said persons is guilty of any and all acts done by any of them in furtherance of such common design or purpose.    If, therefore, you find from the evidence that the defendants, P. D. Tobie and John T. Ebbs, by themselves, or in connection with another or others at any time within three years prior to the filing

of the indictment in this cause, in the county of Jackson, State of Missouri, formed a common design or purpose to sign the name of C. E. Wetmore to the deed in evidence, feloniously intending to forge the name of C. E. Wetmore to said deed *with intent to cheat and defraud*, and that in furtherance of such common design or purpose the witness, John T. Ebbs, in the county of Jackson, State of Missouri, did sign the name of C. E. Wetmore to said deed, you will find the defendant guilty as charged in the second count of the indictment, and assess his punishment at imprisonment in the penitentiary for any time not less than ten (10) years.''

These two instructions read together fully meet the objections of the learned counsel that *"the intent to defraud"* was not required to be found. There is clearly no conflict in the two, and the omission of the first to define what would constitute "the felonious intent" required to make out the offer is fully and clearly expressed in the second, and in such cases it has been repeatedly held that where one of the instructions fully covers the case, as the second instruction does, it was impossible that the other could have operated to the injury of the defendant, especially when the evidence tended to prove no other offense or grade of crime, and the evidence disclosed not the slightest inference that the forgery was committed with any other intent. *State v. Patterson*, 73 Mo. 695; *State v. Talbott*, 73 Mo. 347.

IV. It is next insisted that the court erred in refusing the sixth instruction prayed by counsel for defendant, as follows:

"6. The court instructs the jury that the defendant stands charged with the forgery of a deed, and with causing a deed to be forged. That under the law a deed is an instrument of writing, signed, sealed, and

delivered. That before you can convict the defendant you must be satisfied from the evidence, beyond any reasonable doubt, that the instrument of writing, with the forgery of which defendant is charged in the indictment, was signed, sealed, and delivered in the county of Jackson, and State of Missouri, and if you have any reasonable doubt from all the evidence whether defendant either forged or caused to be forged said instrument, or whether the same was signed, sealed, and delivered in Jackson county, Missouri, then your verdict should be not guilty."

This instruction was erroneous in that it required the jury to find the instrument was not only signed but *"sealed"* by Ebbs. This is no longer necessary in Missouri. By an act of the General Assembly approved February 21, 1893, long before this deed is charged to have been forged, the use of private seals in conveyances of real estate was abolished except as to seals of corporations. The court had already required the State to prove beyond a reasonable doubt that the deed had been forged—in Jackson county, Missouri, and hence no error was committed in refusing this instruction even if it had omitted the necessity of finding it was sealed in this State. Moreover, we can not agree with counsel that there was no evidence that the deed was delivered by Ebbs to Kirkbride in Kansas City, Kansas. On the contrary Ebbs swears that the forgery of Wetmore's name was complete in the New York Life Building in Kansas City, Missouri, and that instrument was offered and read in evidence, and the court correctly instructed the jury that the instrument on its face was a deed. Ebbs further testified they "closed up the trade at the New York Life Building, and that he knew at the time he was forging Wetmore's name." "The trade was consummated in W. T. Reed's office in the New York Life Building."

"When the deed was signed and the *papers exchanged,*
W. T. Reed, Esq., said if we would ride over he would
take the acknowledgments in Kansas." Question by
defendant's counsel: "What did you do with this
deed after signing the name of Wetmore?" Answer:
"Gave it to Mr. Kirkbride." Question: "Before it
was acknowledged?" Answer: "Yes, sir." Question:
"*You completed the deed by delivering it over in Kan-
sas?*" Answer: "*No, sir.*"

W. T. Reed, Esq., testified as to the occurrence in
his office in Kansas City, Missouri, and said: "Then
he and Kirkbride changed papers after this deed was
signed. The deed was handed to me on the road to
Wyandotte. I was Kirkbride's attorney in the mat-
ter."

Kirkbride, the only other witness to the transac-
tion, testified that Ebbs signed Wetmore's name to the
deed in Mr. W. T. Reed's office in Kansas City, Missouri;
thereupon Ebbs handed him the deed and Kirkbride
gave Ebbs the bill of sale to his stock of goods and a
check for $200, and then the suggestion was made to
go over into Kansas to have the acknowledgment
taken. All of these parties corroborate each other that
the forgery was complete in Jackson county, Missouri,
and further that the forged deed was delivered in
Jackson county, Missouri. Moreover, the instruction
prayed by defendant was not the law for the reason
that it was not at all necessary that this forged instru-
ment should have been delivered in Jackson county.
Said this court in *State v. Fisher*, 65 Mo. 437: "It is
the felonious making of the false instrument as true in
fact which constitutes the crime of forgery, conse-
quently it was not necessary for the indictment to aver
that the instrument would have conveyed the land if
genuine. 'The question is whether upon its face it will
have the effect to defraud those who may act upon it

as genuine, or the person whose name is forged.' " All that this instrument needed to make it a deed in form was Wetmore's signature, and when Ebbs feloniously appended Wetmore's name to it the crime was complete. No acknowledgment was necessary as between the parties, and it was a complete deed upon its face, thoroughly adapted to deceive Kirkbride and his attorney, and did deceive them. But it is not necessary that some one shall actually be defrauded. If the instrument is one made with intent to defraud, but before it can have effect other steps must be taken, as in this case a delivery of the deed, then the false making of the completed instrument is a forgery within the meaning of our statute, though the steps necessary to effectuate the fraud are never taken. *Com. v. Costello*, 120 Mass. 358. "It is not necessary to allege or prove that the forged instrument was delivered to anyone, or in any way was passed or uttered." 2 McLain's Crim. Law, secs. 760 and 773; *State v. Washington*, 1 Bay (S. C.), 120; *Com. v. Ladd*, 15 Mass. 526; 3 Chitty, Crim. Law, 1022.

V. Exception was taken to the court's action in refusing instruction number 7, asked by defendant. The court had already given a general instruction as to the right of the jury to pass upon the credibility of the witnesses and another upon the good character of defendant, and went as far as defendant could ask or demand, and it was not error to refuse others upon the same topics.

VI. The court gave the following instruction:

"3. The court instructs the jury that the testimony of an accomplice in the crime, that is, the person who actually committed or participated in the crime, is admissible. Yet the evidence of an accomplice in crime, when not corroborated by some person or persons not implicated in the crime as to matters

material to the issues, matters connecting the defendant with the commission of the crime as charged against him, ought to be received with great caution by the jury, and the jury ought to be fully satisfied of its truth before they should convict the defendant on such testimony.

"The court further instructs the jury that you are at liberty to convict the defendant, P. D. Tobie, on the uncorroborated testimony of an accomplice alone, if you believe the statements as given by such accomplice in his testimony to be true, if you further believe that the state of facts sworn to by such witness, if any, will establish the guilt of said defendant."

Notwithstanding defendant asks us to review our decisions and hold that a conviction can not be had upon the uncorroborated evidence of an accomplice after being duly cautioned by the court, we think these decisions are correct in themselves, and accord with the weight of authority. *State v. Jones*, 64 Mo. 391; *State v. Chyo Chiagk*, 92 Mo. 395; *State v. Harkins*, 100 Mo. *loc. cit.* 672; *State v. Jackson*, 106 Mo. *loc. cit.* 179; *State v. Woolard*, 111 Mo. 248; *State v. Minor*, 117 Mo. 306; *State v. Crabb*, 121 Mo. 554; *State v. Donnelly*, 130 Mo. 642; *State v. Marcks*, 140 140 Mo. 656.

VII. Finally, the giving of the tenth instruction for the State is made a ground of error:

"10. If verbal statements of the defendant have been proven in this case, you may take them into consideration, with all of the other facts and circumstances proven. What the proof may show you, if anything, that the defendant has said against himself, the law presumes to be true, because against himself, but anything you may believe from the evidence the defendant said in his own behalf, you are not obliged to believe, but you may treat the same as true or false,

just as you believe it true or false, when considered with a view to all other facts and circumstances in the case."

The only criticism is that the instruction says the jury "may consider," etc., instead of "must." There is no material difference on this account. The instruction otherwise has been long approved by this court and is unobjectionable. *State v. Hopper*, 71 Mo. 425; *State v. West*, 69 Mo. 401; *State v. Carlisle*, 57 Mo. 102.

Having carefully considered all the exceptions, we find no reversible error in the record and the judgment is affirmed. SHERWOOD and BURGESS, JJ., concur.